UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK N.A.,<br><br>                    Plaintiff,<br><br>          -against-<br><br>BOMBSHELL TAXI LLC, *et al.*,<br><br>                    Defendants. | **MEMORANDUM**<br>**DECISION AND ORDER**<br><br>15 Civ. 5067 (BMC) |

**COGAN**, District Judge.

Plaintiff Citibank brought this action in State Court seeking to recover on loans and the guarantees of those loans taken out by a group of affiliated taxi and taxi management companies, now in Chapter 7 proceedings, and their owner or principal, defendant Evegny Friedman. Friedman gave the guarantees for the taxi companies' debt. When the taxi companies filed for relief under Chapter 11 (they are now in Chapter 7), they removed the action to federal district court based on federal bankruptcy jurisdiction, and Judge Chen, to whom this case was previously assigned, referred it to the Bankruptcy Court on the same jurisdictional basis. After discovery, Citibank moved for partial summary judgment on the Friedman guarantees only; its claims against the taxi debtors are not before me and are still pending in the Bankruptcy Court as part of the adversary proceeding. In addition, as part of the motion, Citibank moved for summary judgment seeking to dismiss Friedman's "lender liability" counterclaims. Those counterclaims are based on alleged breaches of the covenant of good faith and fair dealing arising out of the loan documents.

Because the Bankruptcy Court (Craig, *C.B.J.*) found that it had only "related-to" jurisdiction over the claims between Citibank and Friedman, it rendered Proposed Findings of Fact and Conclusions of Law as to Citibank's motion for summary judgment rather than deciding

the motion, In re Hypnotic Taxi LLC, Adv. Pro. No. 15-1185, 2017 WL 1207471 (E.D.N.Y. March 31, 2017) (the "F&C"), as required by 28 U.S.C. § 157(c)(1).[1]  The standard of review in this Court of the F&C is *de novo*.  See 28 U.S.C. § 157(c)(1).  Familiarity with the F&C is presumed, and the background of this case will therefore not be repeated.

Friedman objects to the F&C on three grounds:  (1) the Bankruptcy Court lacked even "related-to" subject matter jurisdiction; (2) the Bankruptcy Court unreasonably denied Friedman discovery before ruling on the motion, thus depriving him of the ability to demonstrate material issues of disputed fact; and (3) the Bankruptcy Court's conclusion that Friedman had waived his right to bring counterclaims under the language of his guarantees was invalid.  Because none of these points have merit, Friedman's objections are overruled.

# I

The Court would be justified in striking Friedman's objection based solely on his failure to adequately comply with Federal Rule of Bankruptcy Procedure 9033(b).  The Rule states:  "A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs." Fed. R. Bankr. P. 9033(b).  Although there are scattered citations to the Bankruptcy Court docket sheet in Friedman's objection, the only documents which Friedman has caused to be transmitted to this Court are the F&C, his objection, and Citibank's response.[2]  He failed to designate a record even

---

[1] Although the statute references "Proposed Findings of Fact and Conclusions of Law," that title usually applies to factual determinations made after trial.  This label does not fit comfortably on a bankruptcy court's proposed disposition of a motion for summary judgment, as the court is prohibited from resolving disputed facts on such a motion.  I think it is understood in this context that a bankruptcy court's proposed findings of fact means proposed findings of *undisputed* fact.

[2] The district court docket sheet reflects only that portion of the bankruptcy court docket sheet designating the F&C, the objections, and the responses, not the papers underlying the motion for summary judgment.

though his objections assert that "Mr. Freidman respectfully refers the Court to the voluminous record . . . ."[3]

It seemed more than passing strange to be asked to rule *de novo* on a summary judgment motion with none of the motion papers that were before the Bankruptcy Court. I therefore entered an Order advising the parties that I had nothing before me but the three papers that Friedman had transmitted, and that if the record was not supplemented, I would rule based on what I had. Friedman did not respond to that Order.

Federal Courts of Appeal regularly dismiss appeals where the appellant fails to submit an adequate record. See e.g. Tapley v. Chambers, 840 F.3d 370 (7th Cir. 2016); King v. Unocal Corp., 58 F.3d 586 (10th Cir. 1995); United States v. Vasquez, 985 F.2d 491 (10th Cir. 1993); Rodriguez v. American Airlines, Inc., 166 F.3d 1201 (2d Cir. 1988); Brattrud v. Town of Exline, 628 F.2d 1098 (8th Cir. 1980); Grimard v. Carlston, 567 F.2d 1171 (1st Cir. 1978). The instant proceeding is not technically an appeal, but Friedman has created the same practical difficulty by failing to submit the motion papers on which the Bankruptcy Court's decision was based.

I am not going to reject the objections on this ground, as there are ample grounds to overrule them on the merits. But to the extent Friedman expects me to find material disputed factual issues based solely on his objections, he has seriously limited my ability to do so.

---

[3] If Friedman had designated this "voluminous" record, then one of the arguments that Citibank makes would be important – that Bankruptcy Rule 9033 requires objections to specific findings of the Bankruptcy Court rather than the broadside that comprises Friedman's objections. Friedman's objections point to no particular piece of evidence, and his statement – "Mr. Freidman respectfully refers the Court to the voluminous record, which is replete with additional examples of bias against Mr. Freidman" – is an invitation that I decline. "Judges are not like pigs, hunting for truffles buried in the record." Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys., 309 F.3d 433, 436 (7th Cir. 2002) (internal quotation marks omitted).

II

More than half of Friedman's objection is devoted to his contention that the Bankruptcy Court lacked subject matter jurisdiction to issue its F&C. The present attack on jurisdiction constitutes a 180-degree turnaround for Friedman. It was Friedman's wholly-owned taxi companies that removed this adversary proceeding from New York County Supreme Court, where Citibank had commenced it, to the Southern District of New York, the district in which the state court sits. The basis of removal was that it was related to the (then) Chapter 11 cases. Judge Rakoff transferred the case to the Eastern District of New York on the ground that it was related to the taxi companies' bankruptcy proceedings here. On that same jurisdictional basis, Judge Chen referred the case to the Bankruptcy Court in this district. In the letter requesting referral to the Bankruptcy Court, the taxi companies represented that all parties consented to the referral, as long as they could reserve their right to challenge the Bankruptcy Court's jurisdiction to enter dispositive orders. Like his companies, Friedman never objected to subject matter jurisdiction in the Southern District, in the Eastern District before Judge Chen, or before the Bankruptcy Court in the Eastern District. Instead, he litigated extensively with Citibank on the merits, and only now that he has lost has he decided to challenge jurisdiction, raising it for the first time in this Court.

Friedman points to the basic principle that subject matter jurisdiction cannot be waived, and thus he has the right to raise it now despite his earlier position. That is hardly the point. The reason that the Bankruptcy Court exercised jurisdiction is because the vast majority of district-court and bankruptcy-court decisions in this Circuit consider actions on an insider's guarantee to fall within the "related-to" jurisdiction of the bankruptcy court, either because they alter the composition of the creditor body or because the trustee is likely to have subordination or other

4

claims against the guarantor that it did not have against the lender.  See, e.g., Lifetime Brands, Inc. v. ARC International, SA, No. 09-cv-9792, 2010 WL 454680, at *1 (S.D.N.Y. Jan. 29, 2010) ("It appears, moreover, to be well settled that an action to recover on a guaranty of a bankruptcy debtor's obligation is 'related to' the debtor's bankruptcy."); Merrill Lynch Mortgage Capital Inc. v. Esmerian, No. 08 Civ. 5058, 2008 WL 2596369, at *1 (S.D.N.Y. June 30, 2008); In re Ames Dep't Stores, Inc., 190 B.R. 157, 163 (S.D.N.Y. 1995); In re New 118th LLC, 396 B.R. 885, 890-91 (Bankr. S.D.N.Y. 2008); In re River Ctr. Holdings, LLC, 288 B.R. 59 (Bankr. S.D.N.Y. 2003).

Friedman recognizes that the test is whether the outcome of the action could have a "conceivable effect" on the Chapter 11 case, see In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992), but claims that it is "speculative" that the trustee will have claims against him if he pays the guarantee liability and steps into the debtors' shoes.  I see nothing speculative about it, especially considering Friedman's intra-family transfers prior to his putting the taxi companies into Chapter 11, which has already led to an order of attachment over those assets.  Even without that, it is very rare in a large bankruptcy case that the insider's status is not the subject of litigation or negotiation that confers benefits on other creditors.  This is why virtually all cases in this Circuit find that attempts to collect against a debtor's guarantor fall within the bankruptcy court's related-to jurisdiction.  There are one or two cases going the other way, but Friedman has not cited them, and, in any event, they are outliers.

### III

Friedman offers the following argument as to the impact of the Bankruptcy Court having denied some of the discovery he requested:

> What Citibank and the Bankruptcy Court are attempting to do by advocating for a proceeding where Mr. Freidman is denied basic access to relevant and probative

5

>evidence resembles notions of so-called "justice" most commonly associated with non-Democratic countries without significant constitutional protections – certainly not the meaningful opportunity to be heard that is associated with American due process and extended even further by the widely recognized, even more progressive policies of the State of New York. Without that simple layer of fairness, why would we even bother with the façade of a trial in this matter?

This combination of frivolous arguments is the type that I generally hear only from *pro se* litigants, not lawyers at major firms. First, there is no due process or constitutional right to discovery, see United States v. Nixon, 418 U.S. 683, 711-12 & n.19 (1974) (noting the right to production of relevant evidence in civil proceedings does not have the same "constitutional dimensions" as that in criminal proceedings); Ousse v. Lafayette Par. City Court, No. 13-cv-20, 2013 WL 430585, at *3 (W.D. La. Jan 9, 2013) ("There is no general constitutional right to discovery in a criminal case, where life and liberty are at stake, much less in a civil case such as this one, where only money is at stake."), and for most of this nation's history, there was virtually no right to any discovery. See Stephen N. Subrin, Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules, 39 B.C. L. Rev. 691, 694 (1998) ("Historically, discovery had been severely limited in both England and the United States"). Discovery is a procedural mechanism authorized by Congress pursuant to federal procedural rules, not constitutional obligation, the former of which obviously vests enormous discretion in the trial court as to scope.

Second, unless Friedman considers France and Germany to be "non-Democratic countries without significant constitutional protections," his point is flat out wrong, as most Western European countries do not provide for adversarial depositions; indeed, in many, it is prohibited. See Jan W. Bolt & Joseph K. Wheatley, Private Rules for International Discovery in U.S. District Court: The U.S.-German Example, 11 UCLA J. Int'l L. & Foreign Aff. 1, 37 n.87 (2006) (noting that, pursuant to Strafgesetzbuch [StGB] [Penal Code] Nov. 13, 1998, BGBl. I,

6

§ 3322, Germany prohibits the unauthorized performance of an act which may only be performed by public officials, which includes taking depositions).

Finally, while I do not have much of an idea of what Friedman means by the "even more progressive policies of the State of New York," I cannot see how any policy of the State of New York bears on whether a federal bankruptcy court has allowed an appropriate amount of discovery.

Friedman initiates this argument by an attack on the integrity of the Bankruptcy Judge, referring to her as having "show[ed her] bias," which he attempts to prove by setting forth a list of interlocutory rulings in which the Bankruptcy Court ruled in favor of Citibank. He seems not to realize that those rulings are not under review, and that, in any event, he has not even given me a record to determine if they are valid, so that I have no reason to question the validity of any of those rulings. More importantly, the fact that Citibank has consistently prevailed on various positions in the Bankruptcy Court, see, e.g., In re Hypnotic Taxi, LLC, 543 B.R. 365 (Bankr. E.D.N.Y. 2017), in no way suggests that the Bankruptcy Court's rulings were incorrect, let alone biased. The more plausible interpretation is that Friedman's companies are in default, his rationale for transferring assets to his family members for alleged "tax and estate planning" purposes is a poor effort to cover fraudulent transfers, and Citibank is entitled to payment.

Aside from the wholly unsupported accusations of bias, Friedman's argument is insufficient for several reasons. First, on the limited record I have, nothing suggests that Friedman filed a Rule 56(d) affidavit. That alone is sufficient reason to reject his argument to this Court that he needed more discovery. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994) ("A reference to Rule 56[d] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate

7

substitute for a Rule 56[d] affidavit, and the failure to file an affidavit under Rule 56[d] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (citations omitted)).

Second, while all I have to go on are the facts as described in the F&C, it seems clear that Friedman actually received quite a lot of discovery. Friedman's contention was that the checks should not have been dishonored because there were sufficient funds. Based on that, the Bankruptcy Court ordered Citibank to provide Friedman with all of the account statements and copies of all deposit records made on days when checks were dishonored. It also ordered Citibank to produce all emails between the parties and a list of all bounced checks. As the Bankruptcy Court observed in the F&C:

> If Freidman contends that these checks were wrongfully dishonored because sufficient deposits were made to cover them, it would be possible to substantiate this by examining the deposits produced by Citibank and identifying any which should have been made immediately available to draw against. Review of copies of all bounced checks would not assist in this analysis.

In re Hypnotic Taxi LLC, 2017 WL 1207471, at *11. That appears eminently correct, and Friedman has not explained why the Bankruptcy Court was wrong.

Third, the discovery rulings of the Bankruptcy Court are not before me. If Friedman had a problem with the Bankruptcy Court's discovery rulings, he had to move for leave to take an interlocutory appeal to this Court, because even in an adversary proceeding based on related-to jurisdiction, the Bankruptcy Court has final authority to resolve discovery disputes, see In re Trinsum Group, Inc., 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012), just as Magistrate Judges do in district court. More importantly, even if I were to consider the Bankruptcy Court's discovery rulings in connection with Friedman's objections to the F&C, my review would be for abuse of discretion. See In re DG Acquisition Corp., 151 F.3d 75, 79 (2d Cir. 1998); Rockstone Capital LLC v. Metal, 508 B.R. 552, 558 (E.D.N.Y. 2014).

8

Friedman does not come close to making that showing here. Given the need, under recently-amended Federal Rules of Civil Procedure 1 and 26, for the Court to apply a proportionality analysis in subjecting parties to discovery, the Bankruptcy Court was clearly within its discretion to limit discovery.

Finally, and most importantly, Friedman has shown no need for the requested discovery. The Bankruptcy Court's thorough and well-reasoned opinion was based primarily on documentary evidence, and to the extent that Friedman wanted to show modification of the terms of the loan documents by course of dealing (which the documents expressly prohibited), there was no evidence to support it. The Bankruptcy Court was not obliged to give Friedman settlement leverage by subjecting Citibank to burdensome discovery.

## IV

Friedman's final point is that the Bankruptcy Court erred by granting Citibank summary judgment dismissing his counterclaims based on his waiver of counterclaims in his guaranty. He cites inapposite state court cases holding that such waivers may not be enforced where the guarantor shows that the lender's conduct caused the default – a situation that the Bankruptcy Court found did not exist here.

In addition, as an alternative to the waiver in the guarantee, the Bankruptcy Court found that, as part of its determination of Citibank's motion for summary judgment on its complaint, contrary to Friedman's claim, there was no evidence of bad faith conduct by Citibank. Based on that finding, the counterclaims fail *ipso facto* because they are wholly based on allegations of bad faith. Other than claiming that the Bankruptcy Court should have given him more discovery, Friedman has not objected to that alternative ground for dismissing his counterclaims. The

9

failure to object under Bankruptcy Rule 9033 waives his ability to raise this claim, and having reviewed the Bankruptcy Court's F&C, I confirm that the conclusions are correct.

## CONCLUSION

Friedman's objections are overruled, the F&C is adopted as the decision of this Court, and Citibank's motion for partial summary judgment is granted. The adversary proceeding shall continue on the remaining claims before the Bankruptcy Court until a final judgment is entered, which shall include this ruling.

**SO ORDERED.**

                                                        U.S.D.J.

Dated:  Brooklyn, New York
          July 19, 2017